# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1436
_____

Grand Juror Doe

*Plaintiff - Appellant*

v.

Wesley Jonell-Cleavon Bell,[1] in his official capacity as Prosecuting Attorney for
St. Louis County, Missouri

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: March 12, 2020
Filed: August 14, 2020
_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

_____

[1]Wesley J.C. Bell succeeded Robert P. McCulloch in his official capacity as
the Prosecuting Attorney for St. Louis County, Missouri on January 1, 2019.
Pursuant to Federal Rule of Civil Procedure 25(d), the district court substituted Bell
for McCulloch as the named defendant, and the case comes to us with the above
caption.

Grand Juror Doe ("Doe") appeals the district court's[2] dismissal of her action seeking both a declaration that the State of Missouri's grand jury secrecy laws are an unconstitutional abridgement of free speech as applied to her and an injunction preventing their enforcement.[3]  For the reasons below, we affirm.

## I.

On August 9, 2014, Darren Wilson, a former police officer with the City of Ferguson, Missouri, shot and killed Michael Brown.  Following the shooting, St. Louis County Prosecuting Attorney Robert P. McCulloch announced that he intended to submit the matter to a grand jury for consideration.  At the time, Doe was a grand juror serving in the circuit court for St. Louis County for a term originally scheduled to end on September 10, 2014.  Following Brown's death, Doe's service was extended to January 2015, and the grand jury was tasked with investigating whether there was probable cause to believe Wilson committed a crime.

"In Missouri, grand jury proceedings are conducted in secret," *State ex rel. Roe v. Goldman*, 471 S.W.3d 814, 817 (Mo. Ct. App. 2015), and the Wilson grand jury was no different.  To impress upon Doe the significance of this confidentiality requirement, Missouri required Doe to take an oath of secrecy twice, once in May 2014 and a second time in September 2014, swearing in relevant part that she would "truly keep secret" "the counsel of [her] state, [her] fellows and [her] own."  Mo. Rev. Stat. § 540.080.  Missouri law both protects grand jurors in their oath and prohibits them from violating it.  On the one hand, no one may force a juror to

___

[2]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

[3]The district court granted Doe's motion to proceed pseudonymously and thereafter used female pronouns in its orders.  Consistent with the district court and our previous opinion in this matter, *see Doe v. McCulloch*, 835 F.3d 785, 786 n.1 (8th Cir. 2016), we also use female pronouns throughout this opinion.

disclose how she voted "on any question before [her]" or "what opinions were expressed by any juror in relation to any such question." Mo. Rev. Stat. § 540.310. On the other hand, "no member of a grand jury" may "declare in what manner he or any other member of the grand jury voted," *id.*, and "[n]o grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto," *id.* § 540.320. A grand juror who unlawfully discloses evidence or names of witnesses "shall be deemed guilty of a class A misdemeanor." *Id.* Missouri also prohibits witnesses from violating the grand jury's secrecy. *See id.* §§ 540.110, 540.120.

On November 24, 2014, the Wilson grand jury returned a "no true bill," and the jury was subsequently discharged. Immediately afterward, McCulloch held a press conference at which he delivered an oral statement and, in an unusual move, released some of the evidence and testimony presented to the grand jury, including transcripts, reports, interviews, and forensic evidence. The documents were redacted to keep secret the identities of the grand jurors, witnesses, and other persons connected to the investigation. The documents did not include any information concerning the grand jury's deliberations or any grand juror's vote on any charge.

Six weeks later, Doe sued McCulloch in his official capacity under 42 U.S.C. § 1983, seeking both declaratory and injunctive relief because, she claimed, sections 540.080, 540.120, 540.310, and 540.320 of the Missouri Revised Statutes violate the Free Speech Clause of the First Amendment as applied to her.[4] In her complaint, Doe alleged that she had not recounted her experience or expressed her views concerning the Wilson case on account of her fears that she will face criminal penalties or contempt charges. She asserted that McCulloch mischaracterized the views of the grand jurors collectively toward the evidence, the witnesses' credibility, and the law, and as a result, she sought to correct the record. Doe also claimed that

---

[4]We refer to the defendant as Missouri in the rest of this opinion because of the nature of Doe's claim.

she would like to speak about the experience of being a grand juror, including the discrepancies she noticed in the procedures utilized by McCulloch in the Wilson case compared to others. Doe did not express a desire to discuss publicly the Wilson matter completely independently of her role as a grand juror, but instead she sought to pull back the curtain of the jury's secrecy to discuss a wide array of previously confidential matters that go to the heart of the grand jury's deliberations.

The district court initially granted Missouri's motion to dismiss under the abstention doctrine announced in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). *See Doe v. McCulloch*, 106 F. Supp. 3d 1007, 1014 (E.D. Mo. 2015). We vacated and remanded, holding that "the district court should not have dismissed the case outright, but rather should have stayed the case while the state-law issues were decided by the Missouri state courts." *McCulloch*, 835 F.3d at 786. While her federal appeal was pending, Doe pursued state-law claims in Missouri courts, all of which were dismissed in 2016. *See Doe v. MuCulloch*, No. 15SL-CC01891, 2016 WL 9000971, at *1 (Mo. Cir. Ct. Dec. 13, 2016). The Missouri Court of Appeals affirmed the dismissal of Doe's state-law claims in 2017. *See Doe v. McCulloch*, 542 S.W.3d 354, 367 (Mo. Ct. App. 2017).

At the end of litigation in state court, the district court reopened this case. *Doe v. McCulloch*, No. 4:15 CV 6 RWS, 2018 WL 3725774, at *2 (E.D. Mo. June 26, 2018). It then determined that Doe lacked standing to challenge section 540.120 because the statute applies only to witnesses that appear before a grand jury and thus did not apply to Doe. *Doe v. Bell*, 367 F. Supp. 3d 966, 973 (E.D. Mo. 2019). The district court also held that Doe lacked standing to challenge sections 540.080 and 540.310 because neither section provides for criminal penalties and thus were not enforceable by the prosecuting attorney but only by the appropriate Missouri circuit court, which was not a party to the action. As a result, the district court could not redress any injury that fairly could be traced to an action of a named defendant. *Id.* The court then granted Missouri's motion to dismiss Doe's federal constitutional claim concerning section 540.320, holding that Doe had failed to state a claim for which relief could be granted because the statute did not violate Doe's First

-4-

Amendment free speech rights since it was narrowly tailored to serve a compelling governmental interest. *See id.* at 969, 978. Doe appeals.

## II.

On appeal, Doe argues that section 540.320 of the Missouri Revised Statutes is an unconstitutional abridgment of free speech as applied to her and thus that the district court erred in dismissing her challenge against this provision for failure to state a claim.[5] Missouri responds that (1) the First Amendment's Free Speech Clause does not afford Doe a right to speak about matters she learned of during her grand jury service; (2) even if the Free Speech Clause covers her proposed speech, Doe waived her rights when she swore an oath of secrecy; and (3) applying strict scrutiny, section 540.320 is narrowly tailored to achieve a compelling governmental interest.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 927 (8th Cir. 2016). Here, we need not settle whether Doe's proposed speech is covered by the First Amendment or whether Doe waived her speech rights by swearing an oath to keep grand jury matters secret. Because Missouri's grand jury secrecy laws survive even the most exacting scrutiny, Doe failed to state a claim for which relief can be granted.

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. I. "The Fourteenth Amendment makes th[is] prohibition applicable to the States." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 442 (2015). The Supreme Court has previously explained that though states traditionally

---

[5]Doe does not appeal the district court's determination that she lacks standing to challenge sections 540.080, 540.120, and 540.310 of the Missouri Revised Statutes. Thus, we only address the constitutionality of section 540.320. *See Constanza v. Holder*, 647 F.3d 749, 753 n.2 (8th Cir. 2011) (per curiam) (declining to address an argument abandoned by the appellant).

have had broad powers to limit grand jury speech, grand juries "are expected to operate within the limits of the First Amendment, as well as the other provisions of the Constitution." *Butterworth v. Smith*, 494 U.S. 624, 630 (1990) (internal quotation marks omitted). This is because "'a major purpose'" of the First Amendment is "'to protect the free discussion of governmental affairs,'" including the "operations of the courts." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838-39 (1978) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Accordingly, a state's argument that a law advances the functioning of the grand jury is not "some talisman that dissolves all constitutional protections" but must instead be justified by reference to the dictates of the Constitution. *See United States v. Dionisio,* 410 U.S. 1, 11 (1973).

The Free Speech Clause prohibits any governmental body from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* A law is content based if it requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (internal quotation marks omitted). Thus, in evaluating how closely to scrutinize a state restriction of speech, a court must determine whether a statute "draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163.

The district court held that section 540.320 imposes a content-based restriction because it regulates the specific communicative content of speech, and we assume that the district court's determination is correct.[6] *Bell*, 367 F. Supp. 3d

---

[6]Missouri's restrictions on Doe's speech may not be subject to strict scrutiny. At the time of the First Amendment's ratification, the grand jury had operated in secret both in England and the colonies for centuries. *See Butterworth*, 494 U.S. at

at 975. Because Doe may not "disclose any evidence given before the grand jury" or the "name of any witness," Mo. Rev. Stat. § 540.320, the district court reasoned that the prosecuting attorney would have to examine the content of Doe's speech to find a violation of section 540.320, *id.*; *see also In re Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020) (holding that a grand jury subpoena's non-disclosure order constituted a content-based regulation subject to strict scrutiny because the order drew "distinctions based on the message"). Accordingly, we must determine whether section 540.320 is narrowly tailored to achieve a compelling governmental interest as applied to the speech in which Doe avers she wants to engage. *See Reed*, 576 U.S. at 163. We conclude that it is.

## A.

We begin with a review of Missouri's purported interest in grand jury secrecy. As we have previously explained, "strict scrutiny is best described as an end-and-means test," and as a result, we must first have a "clear understanding of what the state's interest may be" before deciding "whether the purported interest is indeed a compelling state interest." *Republican Party of Minn. v. White*, 416 F.3d 738, 750 (8th Cir. 2005) (en banc) (brackets and internal quotation marks omitted).

---

629. As a result, the founding generation incorporated the tradition of secrecy surrounding grand jury proceedings as a vital means of implementing its function by ensuring its impartiality. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218-19, 218 n.9 (1979). This history sits uncomfortably with the notion that speech restrictions in the service of protecting grand jury secrecy are "presumptively invalid." *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992); *Goodman v. United States*, 108 F.2d 516, 520 (9th Cir. 1939) ("It has never been supposed that grand jurors are deprived of the constitutional right of free speech through the oath of secrecy which they take . . . ."). Further, in *Butterworth*, the Supreme Court did not apply strict scrutiny when evaluating a state secrecy requirement concerning the testimony of grand jury witnesses, 494 U.S. at 632, even though the Court introduced the distinction between laws that are content based and laws that are content neutral and applied strict scrutiny to a content-based law as early as its decision in *Police Department of Chicago v. Mosley*, 408 U.S. 92, 100-01 (1972).

The United States Constitution "presumes a role for the grand jury" in American criminal procedure through the Fifth Amendment, *United States v. Navarro-Vargas*, 408 F.3d 1184, 1189 (9th Cir. 2005) (en banc), and the Supreme Court has previously indicated that "[t]here is every reason to believe" the American grand jury "was intended to operate substantially like its English progenitor," *Costello v. United States,* 350 U.S. 359, 362 (1956); *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 658-59 (1834) (explaining that early American legal customs arose from the English common law). As a result, we believe the manner in which grand jury secrecy implicates the First Amendment, ratified at the same time as the Fifth, "must be linked to the grand jury's origins." *Cf. Navarro-Vargas*, 480 F.3d at 1189.

The grand jury is an ancient institution with roots stretching as deep as the twelfth century. *See Navarro-Vargas*, 408 F.3d at 1190. This early version of the grand jury was decidedly a tool of the English Crown. *See Butterworth*, 494 U.S. at 629. It had two main functions—to ferret out criminals to the Crown's officials and to "extend the central government throughout England"—and the Crown successfully controlled the grand jury by fining its members if "they failed to indict any suspect or even if they failed to indict an acceptable number of suspects." Mark Kadish, *Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process*, 24 Fla. St. U.L. Rev. 1, 5-6 (1996) (footnote omitted). In time, the grand jury gained a degree of independence, and by the fourteenth century, the "graunde inquest" was "[n]o longer required to make known to the court the evidence upon which they acted" but instead was "sworn to keep their proceedings secret by an oath which contained no reservation in favor of the government." *See* George J. Edwards, Jr., *The Grand Jury: Considered from an Historical, Political and Legal Standpoint, and the Law and Practice Relating Thereto* 26-28 (Cosimo 2009) (1906).

At common law, the violation of grand jury secrecy was a crime, *see* 4 William Blackstone, Commentaries *126, and jurors defended their right to secrecy as essential to the grand jury's independence, *see* Sara Sun Beale et al., *Grand Jury Law & Practice* § 5.2 (2019). For instance, in 1681, King Charles II sought to

convict the Earl of Shaftesbury of high treason because Shaftesbury opposed the Crown's effort to reestablish the Catholic Church in England. *See* Douglas P. Currier, Note, *The Exercise of Supervisory Powers to Dismiss a Grand Jury Indictment—a Basis for Curbing Prosecutorial Misconduct*, 45 Ohio St. L.J. 1077, 1078 (1984). A grand jury was assembled at the Old Bailey in London and a bill of indictment was placed before it. *See Earl of Shaftesbury's Trial*, 8 How. St. Tr. 759, 771-74 (1681). The Crown moved to hear the evidence in open court, but the grand jury refused, explaining in detail the justifications for secrecy and calling upon the oath they had sworn to "keep secret" the evidence presented before them, as "hath been the constant practice of our ancestors and predecessors." *Id.* at 771-72; *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 521 (6th Cir. 2006) (discussing same); Beale, *Grand Jury Law & Practice* § 5.2 (same). One grand juror observed that "public examination of witnesses could cause suspects to flee; it could prejudice the state by providing the defendant with foreknowledge of all the state's evidence . . . , and it could impair the ability and willingness of the jurors to examine the evidence comprehensively, and 'without favor or affection.'" *See* Beale, *Grand Jury Law & Practice* § 5.2 (quoting 8 How. St. Tr. at 771-74); *see also Navarro-Vargas*, 408 F.3d at 1191 (describing the trial of the Earl of Shaftesbury as the moment that "established grand jury secrecy").

When the institution of the grand jury crossed from England to the American colonies, the rule of grand jury secrecy came with it. *See Costello*, 350 U.S. at 362. The Framers later included the Grand Jury Clause in the Fifth Amendment, "ma[king] grand jury secrecy an implicit part of American criminal procedure." Kadish, *Behind the Locked Door*, at 16; *see Douglas Oil Co.*, 441 U.S. at 218 n.9 ("[G]rand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system."); Joseph L. Story, 3 *Commentaries on the Constitution of the United States* § 1778 (1833) (noting that the grand jury members "sit in secret, and examine the evidence laid before them by themselves"). Over time, courts adopted reasons similar to those expressed by the grand juror at the trial of the Earl of Shaftesbury to justify the grand jury's secrecy. *See Dionisio*, 410 U.S. at 17 n.15 ("[T]he institution was adopted in this country, and is continued from

considerations similar to those which give to it its chief value in England . . . .").  For example, in 1917, a court explained that secrecy is essential because publicity could undermine justice by "warning offenders to escape, to destroy evidence, or to tamper with witnesses."  *United States v. Providence Tribune Co.*, 241 F. 524, 526 (D.R.I. 1917).  The court also explained that secrecy protected the reputations of the unindicted accused and encouraged the candor of witnesses.  *Id.*

These justifications have now been widely accepted in American courts as validating the rule of grand jury secrecy.  *See, e.g.*, *In re Subpoena 2018R00776*, 947 F.3d at 157; *In re Grand Jury Process, Doe*, 814 F.3d 906, 909 (8th Cir. 2015); *Illinois v. F.E. Moran, Inc.*, 740 F.2d 533, 539 (7th Cir. 1984) (Posner, J.) ("[T]he view that grand jury secrecy is very much worth preserving even after the grand jury has been discharged . . . is far too well established . . . to be questioned by us."); *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954) (delineating these justifications as the basis for grand jury secrecy).  The Supreme Court has repeatedly ratified them.  *See, e.g.*, *Douglas Oil Co.*, 441 U.S. at 218; *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 & n.6 (1958).

Indeed, the Court has recognized that "several distinct interests [are] served by safeguarding the confidentiality of grand jury proceedings," explaining that

> if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.  There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.  Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co.,* 441 U.S. at 218-19.

-10-

Other jurists have concluded that the secrecy of *who* makes up the grand jury also serves to legitimate its decisions and to shield grand jurors from intimidation and harassment both during and after their service, ensuring their deliberation is not driven by concerns beyond the scope of the charged crime and the presented evidence. *See Butterworth,* 494 U.S. at 636-37 (Scalia, J., concurring); *United States v. Amazon Indus. Chem. Corp.*, 55 F.2d 254, 261 (D. Md. 1931); *Goldman*, 471 S.W.3d at 817. It is thus no surprise that Missouri also recognizes these traditional interests in grand jury secrecy. *See McCulloch*, 2016 WL 9000971, at *4 (stating that "grand jury secrecy is intended to protect the public welfare" because it "protect[s] the jurors themselves," "promote[s] a complete freedom of disclosure," "prevent[s] the escape of a person indicted before he may be arrested," and "protect[s] the reputations of persons against whom no indictment may be found"); *see also Mannon v. Frick*, 295 S.W.2d 158, 162 (Mo. 1956) (reasoning similarly).

We have previously explained that what constitutes a compelling interest "is not easily defined," but we have recognized that a state advances a compelling interest when a policy is necessary for "upholding the administration of justice." *White*, 416 F.3d at 749-50, 750 n.5. This is because the administration of justice is an "interest of the highest order" and an "overriding state interest." *See id.* at 749 (brackets omitted); *see also Williams-Yulee*, 575 U.S. at 437-38, 444 (holding that Florida had a compelling interest in regulating how judicial candidates solicited campaign funds because of the state's overriding interest in "assur[ing] its people that judges will apply the law without fear or favor").

The Supreme Court has frequently observed that secrecy ensures the grand jury fulfills its "dual function" as both a sword and shield of American criminal law, "ferret[ing] out crimes deserving of prosecution" and "screen[ing] out charges not warranting prosecution." *See, e.g.*, *United States v. Sells Eng'g, Inc*, 463 U.S. 418, 424 (1983) ("Grand jury secrecy, then, is as important for the protection of the innocent as for the pursuit of the guilty." (internal quotation marks omitted)). In fact, "the proper functioning of our grand jury system depends upon the secrecy of

-11-

grand jury proceedings" so much so that the Court has referred to its confidentiality as "vital." *Rehberg v. Paulk*, 566 U.S. 356, 374 (2012).

We think it thus beyond dispute that secrecy is an integral component to a functioning grand jury system and that once a state chooses to adopt it as a mechanism for screening indictments, the grand jury's secrecy becomes an interest of the highest order because it is necessary for "upholding the administration of justice." *See White*, 416 F.3d at 749-50 & n.5; *Butterworth*, 494 U.S. at 629-30; *In re Grand Jury Subpoenas*, 454 F.3d at 521 ("Grand jury secrecy is thus a strong command, and federal courts must recognize that, for the system to function properly, grand jury proceedings must be conducted essentially in a vacuum, free from outside influence and sufficiently enveloped so that grand jury information is not disclosed to the general public." (internal quotation marks omitted)). As a result, Missouri has demonstrated section 540.320 advances a compelling governmental interest.

B.

Doe asserts that even if grand jury secrecy ordinarily constitutes a compelling interest, section 540.320's requirement that she not disclose evidence or witness names is no longer narrowly tailored to advance that interest because McCulloch took the "extraordinary" step of releasing evidence and other information concerning the proceedings of the grand jury. Doe contends that the volume of information that is now public militates in favor of permitting her to speak broadly on issues that have not previously been disclosed. We disagree.

For a statute to be narrowly tailored, it must be the least restrictive means of serving the government's interest. *See McCullen*, 573 U.S. at 486. "A narrowly tailored regulation is one that actually advances the state's interest," "does not sweep too broadly," "does not leave significant influences bearing on the interest unregulated," and "could be replaced by no other regulation that could advance the interest as well with less infringement of speech." *White*, 416 F.3d at 752. "This

-12-

narrow tailoring requirement means . . . that the factual situation demonstrates a real need for the government to act to protect its interests." *Willson v. City of Bel-Nor*, 924 F.3d 995, 1001 (8th Cir. 2019).

First, we think it self-evident that section 540.320 continues to "actually advance[] the state's interest." *See White*, 416 F.3d at 752. Section 540.320 protects the identity of witnesses and keeps confidential the specific information they provided to the grand jury. *See Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 566 n.11 (1983). McCulloch did not release this information, and it simply is not the case that the state forfeits its interest in maintaining the secrecy of all grand jury materials and proceedings merely because it chooses to disclose some information. *See United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994) (denying the release of grand jury minutes even after the defendant was indicted and prosecuted).

Second, Missouri maintains an interest in protecting the secrecy of the grand jury's deliberative process. *See In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 306 (8th Cir. 1988) (noting that the rule of secrecy is designed "to preserve the freedom and integrity of the deliberative process"). McCulloch did not reveal any information regarding the grand jury's membership, deliberations, or voting, and we believe Missouri maintains an interest in keeping this information—including Doe's own views—secret. *See United States v. Nixon*, 418 U.S. 683, 705 (1974) (explaining that when participants in a discussion expect the public dissemination of their remarks, they "may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process"). Confidentiality "helps to assure . . . that grand jurors will not be intimidated in the execution of their duties by the fear of unjustified public criticism." *See Butterworth*, 494 U.S. at 636-37 (Scalia, J., concurring). And it does not suffice to say that grand jurors could respond to that criticism because permitting them to respond "would have its own adverse effects, including the subjection of grand jurors to a degree of press attention and public prominence that might in the long run deter citizens from fearless performance of their grand jury service." *Id.*

Third, section 540.320 protects the unindicted accused from public ridicule or other opprobrium. *See Douglas Oil Co.,* 441 U.S. at 218-19. To be sure, in a case where the name of the accused and the facts are widely known, this concern is of less importance. But the fact that much of the evidence is public does not lessen Missouri's compelling interest in ensuring individual members of the grand jury do not use the information they gathered as part of the grand jury process to impugn the innocence of the accused with charges they could not agree to collectively. *See id.* at 218 n.8 (noting that petitioners were entitled to the "protection" of grand jury secrecy even though they had already been indicted and had pleaded *nolo contendere*). Only the grand jury *as a whole* is in a position to have competently considered the credibility of witnesses as well as the relevant evidence. Thus, the fact that much of the evidence is publicly available does not diminish Missouri's concern for protecting the accused's reputational interest, having subjected him to the grand jury process in the first place. *See id.* at 222 ("The interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.").

Next, we do not believe the challenged provision sweeps too broadly. *See In re April 1956 Term Grand Jury*, 239 F.2d 263, 272 (7th Cir. 1956) (concluding that "the safeguard of secrecy, in the interest of the public, continues even after the grand jury has completed its efforts"). Doe does not claim that she is prevented from discussing anything concerning the Wilson matter other than the knowledge she gained of the evidence, witness identities, and deliberations in the context of her role as a grand juror. Section 540.320's requirement that Doe not disclose matters she learned as part of her grand jury service is a limitation on Doe's speech that is "narrowly drawn" to protect the interests highlighted above. *See United States v. Anderson*, 759 F.3d 891, 895 (8th Cir. 2014).

Neither do we believe that section 540.320 is underinclusive; that is, it does not permit "vast swaths" of speech that undermine the state's compelling interest such that the statute cannot be said to "advance its stated purpose." *See Williams-Yulee*, 575 U.S. at 448-49. "It is always somewhat counterintuitive to argue that a

-14-

law violates the First Amendment by abridging *too little* speech," but "underinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 448 (internal quotation marks omitted). "Underinclusiveness can also reveal that a law does not actually advance a compelling interest." *Id.* at 449. Here, we see "no fatal underinclusivity concerns." *See id.* No information concerning any grand juror's view of the evidence or witnesses' credibility has been released, and their votes remain confidential. Indeed, the grand jurors' deliberations were not transcribed at all, and as a result, could only become public if a grand juror chose to violate her oath.

Finally, we conclude there is no more limited means by which Missouri can advance its interest in preserving the functioning of the grand jury system. If Doe were to speak on the quality of the evidence, the credibility of witnesses, or the deliberations of fellow jurors concerning the same, she would necessarily undermine the functioning of the grand jury. Witnesses in future cases may be less candid. The unindicted may face unending questions about culpability as juror after juror comes forward with their own view of the evidence, feeling pressured to respond either to challenge or defend Doe's views, lest their collective decision be mischaracterized. And in future cases, jurors might hesitate to discuss matters candidly or to vote their conscience out of fear of future publicity. *See Butterworth*, 494 U.S. at 636-37 (Scalia, J., concurring); *Douglas Oil Co.*, 441 U.S. at 222 (explaining that in evaluating grand jury disclosures, "courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries").

The Supreme Court's holding in *Butterworth* is not to the contrary. 494 U.S. 624. There, the Court held that a witness who testified before a Florida grand jury could not be prohibited from disclosing the substance of his testimony after the term of the grand jury had ended. 494 U.S. at 626. But the Court purposely did not address the right of a witness to discuss his "experience" before the grand jury. *Id.* at 629 n.2. It instead limited its holding to allow the witness to "divulge information

-15-

of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury." *Id.* at 631-32. This case thus varies from *Butterworth* in a critical way: Doe proposes to divulge information that she obtained *as a direct result* of her participation in the Wilson grand jury. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (holding that a protective order prohibiting a newspaper from publishing information which it had obtained through discovery procedures did not violate the First Amendment).

Accordingly, we hold that, as applied to Doe, section 540.320 of the Missouri Revised Statutes is narrowly tailored to serve Missouri's compelling interest in preserving the functioning of its grand jury system. As a result, it is the "rare case" of a speech restriction that survives strict scrutiny review. *See Burson v. Freeman*, 504 U.S. 191, 211 (1992) (plurality op.) (upholding under strict scrutiny review a content-based law that required "solicitors to stand 100 feet from the entrances to polling places" because "the right to cast a ballot in an election free from the taint of intimidation and fraud" trumped other free speech rights); *cf. Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995) ("[W]e wish to dispel the notion that strict scrutiny is 'strict in theory, but fatal in fact.'").[7]

---

[7]Doe implores us to consider federal court interpretations of Federal Rule of Criminal Procedure 6(e), but that rule has no bearing on the constitutionality of Missouri's grand jury secrecy regulations. Although these cases pertain to the release of grand jury material, they do not address a juror's rights under the Free Speech Clause. *See, e.g.*, *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (per curiam) (explaining that "there is no First Amendment right of access to secret grand jury matters," and instead, in federal cases, "Rule 6(e) governs what [the court] may or may not release to the public"). And even if it were relevant to Doe's claim, Rule 6(e) specifically prohibits "a grand juror" from "disclos[ing]" any matter occurring before the grand jury, including "the grand jury's deliberations or any grand juror's vote." Fed. R. Crim. P. 6(e)(2)(B)(i), 6(e)(3)(A).

## III.

For the foregoing reasons, we affirm.

_____