[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Oct. 26, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10199

_____

D. C. Docket No. 05-20770-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

GLORIA FLOREZ VELEZ,
BENEDICT P. KUEHNE,
OSCAR SALDARRIAGA OCHOA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 26, 2009)

Before BARKETT and HULL, Circuit Judges, and QUIST,* District Judge.

_____

  * Honorable Gordon J. Quist, United States District Judge for the Western District of
Michigan, sitting by designation.

BARKETT, Circuit Judge:

The United States Government appeals the dismissal of Count One of its indictment against Gloria Florez Velez, Benedict P. Kuehne, and Oscar Saldarriaga Ochoa ("Saldarriaga") (collectively "Defendants"), in which the Government charged Defendants with money laundering in violation of 18 U.S.C. §§ 1956(h) and 1957.[1]  The district court dismissed Count One on the ground that Defendants are exempt from criminal prosecution under § 1957(a) because the plain language of § 1957(f)(1) excludes from the statute's scope "any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution."  The parties do not dispute that the money allegedly laundered was used for the payment of legal fees.  This appeal presents an issue of first impression in this circuit regarding the meaning of the exemption in § 1957(f)(1).[2]

Kuehne, a Miami attorney, was hired by the Miami-based criminal defense team of Fabio Ochoa, an accused Colombian drug leader, to review the source of funds to be used to pay Ochoa's legal defense fees in the United States.  The purpose of the review was to determine whether the funds to be used for Ochoa's

---

[1] Section 1957(a) prohibits a person from knowingly engaging or attempting to engage "in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity."

[2] We review a district court's conclusions of law de novo.  See American Dredging Co. v. Lambert, 153 F.3d 1292, 1295 (11th Cir. 1998)

defense were derived from criminal proceeds. Kuehne hired Colombian attorney Saldarriaga and Colombian accountant Velez to assist him. After conducting his investigation, Kuehne issued "opinion letters" in which he concluded that several monetary transfers from Ochoa to him, as an intermediary, were not comprised of proceeds of criminally derived property. Kuehne then transferred the fees, totaling approximately $5.3 million, to Ochoa's defense team. The Government alleged that Kuehne and his co-defendants supported their conclusion that the funds were untainted with false documents and statements, knowing that the funds were criminally derived and intending to conceal their true source.

Kuehne and his co-defendants moved to dismiss Count One of the indictment on the ground that monetary transactions made for the purpose of securing legal representation are exempt from criminal penalties under § 1957(f)(1). The district court granted the motion, and we affirm.

## DISCUSSION

In interpreting a statutory provision, we look to "the language [of the provision] itself, the specific context in which that language is used, and the broader context of the statute as a whole." Nken v. Holder, __ U.S. __, 129 S.Ct. 1749, 1756 (2009) (quotation and citation omitted). After examining the language and context of a particular statutory provision, "[o]ur inquiry must cease if the

3

statutory language is unambiguous and the statutory scheme is coherent and consistent." Robinson v. Shell Oil, 519 U.S. 337, 340 (1997) (quotations and citation omitted). In addition, we must not read "any provision, or even any word, of a statute so as to make it superfluous." Medberry v. Crosby, 351 F.3d 1049, 1060 (11th Cir. 2003); see also Duncan v. Walker, 533 U.S. 167, 174 (2001).

Section 1957(a) prohibits knowingly engaging or attempting to engage "in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). However, the statute exempts "any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." 18 U.S.C. § 1957(f)(1). Thus, the plain meaning of the exemption set forth in § 1957(f)(1), when considered in its context, is that transactions involving criminally derived proceeds are exempt from the prohibitions of § 1957(a) when they are for the purpose of securing legal representation to which an accused is entitled under the Sixth Amendment. Accordingly, the exemption is limited to attorneys' fees paid for representation guaranteed by the Sixth Amendment in a criminal proceeding and does not extend to attorneys' fees paid for other purposes. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.").

4

The Government argues that the exemption in § 1957(f)(1) has been "nullified" or "vitiated" because, shortly after the provision was enacted, the Supreme Court held in Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626 (1989) that the Sixth Amendment right to counsel does not protect the right of a criminal defendant to use criminally derived proceeds for legal fees. However, Caplin & Drysdale, which addresses a different statute governing the civil forfeiture of criminally derived proceeds, has no bearing on § 1957(f)(1) and indeed supports the conclusion that such proceeds have been statutorily exempted from criminal penalties. The Government has pointed to no principle of statutory construction—nor indeed to any legal principle—that supports the conclusion that a statutory provision may be "nullified" by a Supreme Court decision on a completely different issue, absent any indication that Congress intended such a result.

In Caplin & Drysdale, the Court addressed the constitutionality of 21 U.S.C. § 853, a federal forfeiture provision requiring individuals to surrender criminally derived assets and setting out the forfeiture process. Unlike section 1957, § 853 contains no express exemption for funds paid for legal representation. It simply requires the forfeiture of all criminally derived proceeds, without exception. In Caplin & Drysdale, the defendants argued, among other things, that the Supreme

Court should read into the forfeiture statute an exemption for criminal proceeds used to pay attorneys' fees, because, they claimed, such an exemption was required under the Sixth Amendment. The Court characterized the issue before it as follows:

> We are called on to determine whether the federal drug forfeiture statute includes an exemption for assets that a defendant wishes to use to pay an attorney who conducted his defense in the criminal case where forfeiture was sought. Because we determine that no such exemption exists, we must decide whether that statute, so interpreted, is consistent with the Fifth and Sixth Amendments. We hold that it is.

491 U.S. at 619.

The Court recognized that Congress could statutorily exempt tainted proceeds used to pay attorneys' fees from the forfeiture provision and therefore looked first to the statute to determine whether it had done so. Id. at 622-23. After concluding that the forfeiture provision contained no such exemption, id., the Court held simply that Congress may require the forfeiture of criminally derived proceeds, even if those proceeds are used for legal representation, without running afoul of the Sixth Amendment right to counsel. See id. at 625-628. Contrary to the Government's argument, Caplin & Drysdale did not alter or refine the meaning of the Sixth Amendment limitation to the exemption in § 1957(f)(1) by its (unremarkable) holding that the Sixth Amendment alone does not require an exemption from forfeiture for tainted proceeds used for attorneys' fees. Rather, the

6

opinion supports our interpretation of § 1957(f)(1) by highlighting the contrast between Congress's failure to exempt criminally derived proceeds used for attorneys' fees from forfeiture and its subsequent decision to exempt such proceeds from criminal penalties.

The United States Solicitor General explained the distinction between civil forfeiture and criminal penalties in his 1989 brief to the Supreme Court in United States v. Monsanto, 491 U.S. 600 (1989), a companion case to Caplin & Drysdale. The brief states explicitly that, although the criminal defense bar had urged Congress "to exclude from [civil] forfeiture those assets that the defendant wants to use to pay an attorney, Congress ha[d] declined to do so." United States v. Monsanto, Gov't Br., 1989 WL 1115135, at *33-34. The brief continues:

> Explanatory statements inserted into the extension-of-remarks section of the Congressional Record likewise refer only to a possible exemption from the new criminal sanctions, with no suggestion of an intent to exempt attorneys' fees from forfeiture.
>
> * * * * *
>
> In 1988, Congress did amend 18 U.S.C. § 1957(f)(1) . . . to provide that the term "monetary transaction" does not "include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." Once again, however, in spite of continuing pressure from the defense bar, Congress did not go so far as to enact a statutory exemption from forfeiture that would permit a defendant to use forfeited assets to pay attorneys' fees.

Id. at *37 n.31.

7

We likewise view the exemption for attorneys' fees as a crucial distinction between the criminal charges at issue under § 1957 and the forfeiture provision, and we do not read Caplin & Drysdale as having any bearing on the phrase "representation as guaranteed by the sixth amendment" in § 1957(f)(1), except to affirm that distinction.[3]

As the Government concedes, accepting its interpretation of § 1957(f)(1) would read all meaning out of the exemption. Section 1957 criminalizes only transactions involving criminally derived proceeds. It would therefore make little sense—and would be entirely superfluous—to read § 1957(f)(1) as an exemption from criminal penalties for non-tainted proceeds spent on legal representation, as those funds can always be used for any legal purpose. We do not believe Congress intended such an absurd result, which nullifies the provision and divorces it from its statutory context, thereby violating basic canons of statutory construction. See Shell Oil, 519 U.S. at 341; Duncan, 533 U.S. at 174. Rather, as we have noted, the

---

[3] The Government's reading of Caplin & Drysdale rests on the rocky premise that Congress passed § 1957(f)(1) under the mistaken belief that there was (or might be) a Sixth Amendment right to pay attorneys' fees with criminally derived proceeds, and this belief was then corrected by the Supreme Court in Caplin & Drysdale, thereby nullifying the exemption. This is an implausible interpretation of Congress's belief at the time it drafted § 1957(f)(1). Plainly, Congress did not believe that an accused had a constitutional right to pay his attorney with tainted money. If it had, there would have been no need for a statutory exemption in the first place, because the Sixth Amendment would have been sufficient to exempt tainted proceeds used for attorneys' fees. To the contrary, Congress likely believed exactly the opposite—that in order to decriminalize certain transactions made for the purpose of securing legal representation, a statutory exemption was required.

8

phrase "representation as guaranteed by the sixth amendment" refers, as it always has, to the type of legal representation to which a criminal defendant is entitled under the Sixth Amendment. In short, it is the representation itself—not the transaction—that must be guaranteed by the Sixth Amendment before the statutory exemption may be applied.

The district court was eminently correct in holding that Defendants are not subject to criminal prosecution under § 1957(a), because the plain language of § 1957(f)(1) clearly exempts criminally derived proceeds used to secure legal representation to which an accused is entitled under the Sixth Amendment.[4]

**AFFIRMED.**

---

[4] Although we are also persuaded that the legislative history of § 1957(f)(1) supports this interpretation, we do not address that history in light of our reading of the statute's plain meaning and context.