[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11483

_____

WILLIAM E. HENRY,

Plaintiff-Appellant
-Cross Appellee,

*versus*

ATTORNEY GENERAL, STATE OF ALABAMA,

Defendant-Appellee
-Cross Appellant,

MILES M. HART,
in his official capacity as Deputy Attorney General for the
State of Alabama and Chief of the Special Prosecutions Divisions,

Defendant.

———————————

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:17-cv-00638-RAH-JTA

———————————

Before WILLIAM PRYOR, Chief Judge, LUCK and ED CARNES, Circuit
Judges.

LUCK, Circuit Judge:

In *Butterworth v. Smith*, 494 U.S. 624 (1990), the Supreme
Court held that, to the extent Florida's grand jury secrecy law pro-
hibited a grand jury witness from divulging information he learned
before he testified to the grand jury, it violated the First Amend-
ment's Free Speech Clause. *Id.* at 635–36. But *Butterworth* left
open the question of whether, to the extent Florida's grand jury
secrecy law prohibited a witness from disclosing grand jury infor-
mation he learned "only by virtue of being made a witness," the
secrecy law also violated the First Amendment. *Id.* at 636 (Scalia,
J., concurring).

This case raises both issues—the one *Butterworth* decided
and the one it didn't. Does Alabama's grand jury secrecy law pro-
hibit a grand jury witness from divulging information he learned
before he testified to the grand jury, and if so, does the secrecy law

violate the First Amendment? And does the Alabama grand jury secrecy law's prohibition on a witness disclosing grand jury information he learned "only by virtue of being made a witness" violate his First Amendment free speech rights? *See id.*

We conclude that Alabama's grand jury secrecy law, unlike the Florida law in *Butterworth*, cannot reasonably be read to prohibit a grand jury witness from divulging information he learned before he testified to the grand jury. We also conclude that the grand jury secrecy law's prohibition on a witness's disclosure of grand jury information that he learned only by virtue of being made a witness does not violate the Free Speech Clause.

## FACTUAL BACKGROUND

### Alabama's Grand Jury Secrecy Law

For almost half a century, Alabama has protected the secrecy of its grand jury proceedings. In enacting the grand jury secrecy law in 1975, the Alabama Legislature determined that "it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate." Ala. Code § 12-16-214. The grand jury secrecy law is "to be construed" to accomplish four purposes:

> (1) That grand juries have the utmost freedom in their discussions, deliberations, considerations, debates, opinions and votes without fear or apprehension that the same may be subsequently disclosed, or that they may be subject to outside pressure or influence or injury in their person or property as a result thereof.

(2) That those persons who have information or knowledge with respect to the commission of crimes or criminal acts be encouraged to testify freely and truthfully before an appropriate grand jury without fear or apprehension that their testimony may be subsequently disclosed, or that they may be subject to injury in their person or property as a result thereof.

(3) That those persons who have committed criminal acts or whose indictment may be contemplated not escape or flee from the due administration of justice.

(4) That those persons falsely accused of criminal acts are not subject to public scrutiny or display and their otherwise good names and reputations are left intact.

*Id.* § 12-16-214(1)–(4).

There are two key sections to the Alabama grand jury secrecy law. First, it prohibits the disclosure of the internal deliberations and opinions of the grand jurors:

No past or present grand juror, past or present grand jury witness or grand jury reporter or stenographer shall willfully at any time directly or indirectly, conditionally or unconditionally, by any means whatever, reveal, disclose or divulge or attempt or endeavor to reveal, disclose or divulge or cause to be revealed, disclosed or divulged, any knowledge or information pertaining to any grand juror's questions, considerations, debates, deliberations, opinions or votes on any

> case, evidence, or other matter taken within or occurring before any grand jury of this state.

*Id.* § 12-16-215.

And second, the law prohibits the disclosure of the evidence, questions, answers to questions, testimony, and conversations presented to the grand jury:

> No past or present grand juror, past or present grand jury witness or grand jury reporter or stenographer shall willfully at any time, directly or indirectly, conditionally or unconditionally, by any means whatever, reveal, disclose or divulge or endeavor to reveal, disclose or divulge or cause to be revealed, disclosed or divulged, any knowledge of the form, nature or content of any physical evidence presented to any grand jury of this state or any knowledge of the form, nature or content of any question propounded to any person within or before any grand jury or any comment made by any person in response thereto or any other evidence, testimony or conversation occurring or taken therein.

*Id.* § 12-16-216.

The Alabama grand jury secrecy law allows any prosecutor, grand jury foreman, or circuit court to require witnesses "to submit to an oath or affirmation of secrecy." *Id.* § 12-16-219. It also provides that "[t]he failure of any witness to be so sworn shall not relieve such witness of any criminal liability imposed" by Alabama's

grand jury secrecy law. *Id.* Any person who violates the grand jury secrecy law commits a felony punishable by one to three years' imprisonment. *Id.* § 12-16-225.

*Henry's Testimony Before the Grand Jury*

Starting in 2013, Mike Hubbard, the former Speaker of the House of the Alabama Legislature, was the target of a grand jury investigation in Lee County, Alabama. He was accused of misusing his office for personal gain, including by funneling money into his printing business. Speaker Hubbard was indicted in state court in October 2014 on twenty-three counts. He was convicted of twelve counts following a trial. The Alabama Court of Criminal Appeals vacated one of the convictions because of insufficient evidence of guilt and affirmed the other eleven. *Hubbard v. State*, 321 So. 3d 8 (Ala. Crim. App. 2018). The Alabama Supreme Court reversed five of the remaining convictions on insufficient-evidence grounds and affirmed the other six. *Ex Parte Hubbard*, 321 So. 3d 70 (Ala. 2020). So, the Court of Criminal Appeals reversed one count of conviction on insufficiency-of-evidence grounds, the Alabama Supreme Court reversed five more counts on those grounds, and when the appellate dust cleared there were convictions on six counts still standing.

William Henry was a state representative at the time of the investigation into Speaker Hubbard. Henry believed that he had evidence undermining the accusations against the speaker and contacted the defense team to help them.

Before Henry testified as a grand jury witness, he talked with other legislators about the Speaker Hubbard investigation. These discussions included rumored leaks coming from the grand jury. Joe Hubbard, another state legislator, allegedly gave Henry detailed confidential grand jury information about witness testimony, subpoenas, and imminent indictments. Representative Hubbard told Henry in September 2013 that a witness had recently testified before the grand jury. Henry had an interaction with the witness that seemed to confirm the rumor. The media later published information about the witness appearing in front of the grand jury, but Henry already knew about the witness testifying before the story came out.

Henry heard rumors that Representative Hubbard's grand jury source was Baron Coleman—Representative Hubbard's former law partner and a lobbyist who had connections to the lead prosecutor on the grand jury investigation, Deputy Attorney General Miles "Matt" Hart. Henry believed that Coleman was using information leaked by Deputy Attorney General Hart to improperly influence political races in Alabama.

Henry contacted Speaker Hubbard's defense team and told them about the grand jury leaks. Speaker Hubbard's counsel, in turn, reached out to a federal prosecutor. Deputy Attorney General Hart then called Henry to question him about his leak claims. Henry was subpoenaed to testify before the grand jury after his call with the Deputy Attorney General, and he testified one week later on January 24, 2014.

A local news organization later released a recorded conversation between Deputy Attorney General Hart and Coleman. The recording was made the day before Henry's grand jury testimony. In the recording, Deputy Attorney General Hart called Coleman a confidential source and said that "the [g]rand [j]ury [s]ecrecy thing . . . shut[s] you down because you go in there and we say 'Don't you speak about this,' it is a very broad prohibition." He told Coleman that "we are on utterly solid ground shutting people up."

Henry thought that Deputy Attorney General Hart engaged in prosecutorial misconduct during his grand jury appearance. Henry wished to speak about his grand jury testimony and the prosecutorial misconduct he allegedly witnessed, but he believed that "discussing any of the information he disclosed to the grand jury" would violate the Alabama grand jury secrecy law.

## PROCEDURAL HISTORY

In 2017, Henry sued the Attorney General of Alabama in federal court. His complaint brought First Amendment claims under 42 U.S.C. section 1983. In count one, Henry alleged that section 12-16-215, as "written and as applied to him," violated his First Amendment free speech rights. He alleged that he wished to reveal his knowledge about the grand jury investigation into Speaker Hubbard and that his speech about "his grand jury testimony" was constitutionally protected. Section 12-16-215 unconstitutionally abridged his speech, Henry alleged, and the statute failed strict scrutiny and was overbroad facially and as applied. In count two, Henry alleged that section 12-16-216, as written and as applied, also

21-11483                Opinion of the Court                9

violated his First Amendment free speech rights by prohibiting the disclosure of his grand jury testimony and what he learned inside the grand jury room. He argued that this statute too failed strict scrutiny and was overbroad.[1]

Henry sought: (1) a declaratory judgment that the Alabama grand jury secrecy law unconstitutionally prevented grand jury witnesses from discussing their testimony; (2) an injunction preventing the enforcement of the Alabama grand jury secrecy law against Henry for revealing his testimony; (3) an order releasing the transcript of Henry's testimony; (4) an order enjoining the Attorney General and his agents from providing inaccurate and misleading warnings to grand jury witnesses; and (5) attorney's fees and costs.

The parties filed cross motions for summary judgment. The Attorney General argued that the Alabama grand jury secrecy law didn't apply to information a witness learned "prior to being called to testify" and didn't prohibit Henry from discussing what "he learned outside the grand jury room." As to Henry's grand jury testimony and matters that occurred inside the grand jury room, the Attorney General contended that—applying the balancing test in *Butterworth*—the state's interests in continued grand jury

---

[1] In counts three and four, Henry brought the same facial and as-applied challenges to sections 12-16-219 (the oath statute) and 12-16-225 (the statute making a violation of the grand jury secrecy law a felony). These counts are not at issue in this appeal.

confidentiality outweighed Henry's First Amendment free speech rights.

Henry, naturally, saw things differently. He argued that the Alabama grand jury secrecy law was overbroad because, in preventing witnesses from speaking about the "content" of their testimony, it prohibited them from discussing information they learned outside the grand jury room. And, as to his grand jury testimony, Henry maintained that his First Amendment free speech rights outweighed the state's interests in confidentiality.

The district court partially granted and partially denied the cross motions for summary judgment. The district court split Henry's First Amendment claims into two parts: (1) a challenge to the Alabama grand jury secrecy law to the extent it prohibited Henry from disclosing information he learned on his own outside the grand jury room; and (2) a challenge to the Alabama grand jury secrecy law's prohibition against disclosing information he learned within the grand jury room.

As to the first part, the district court concluded that, even looking at section 12-16-215 "in the broadest sense," it didn't reach information Henry learned before testifying to the grand jury. The district court explained that section 12-16-215 was "directed toward the disclosure of the grand jury's actions," which Henry didn't seek to disclose.

But the district court reached a different conclusion about section 12-16-216. The district court explained that section 12-16-

216's key terms were undefined, which left the public "to use its best guess as to the speech" prohibited by the statute. Section 12-16-216 "appears to capture prior knowledge," the district court reasoned, because that would include "knowledge of the '*nature or content*'" of the physical evidence, the questions asked, the answers to them, and any "other testimony taken during the grand jury proceeding." The district court explained that the Alabama grand jury secrecy law was "not too different" from the Florida law struck down by *Butterworth*. Because the plain text of the statute would "arguably" allow for a prosecution against Henry if he were to disclose information he learned outside the grand jury room, the district court concluded that this "overly broad" language violated Henry's First Amendment free speech rights.

As to Henry's challenge to the Alabama grand jury secrecy law's bar against him disclosing what he learned only "as a direct result of his participation" as a witness, the district court sided with the Attorney General. Reasoning that the grand jury secrecy law was a content-based regulation of speech, the district court applied strict scrutiny to Henry's free speech claim. The district court concluded that the Alabama grand jury secrecy law was narrowly tailored to serve the state's compelling interests in grand jury confidentiality. And the district court found that the state's interests in grand jury confidentiality outweighed Henry's First Amendment free speech rights.

The district court declared section 12-16-216 unconstitutional "as it applie[d] to Henry's prior knowledge" and entered

judgment for him to the extent the statute applied to information learned outside the grand jury room.  The district court entered judgment for the Attorney General "on all other claims."  Henry and the Attorney General appeal the district court's judgment.

## STANDARD OF REVIEW

We review de novo the district court's summary judgment, viewing the evidence and all factual inferences in favor of the non-moving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  A district court should grant summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We likewise review questions of constitutional law de novo.  *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1330 (11th Cir. 2021).  And we review de novo "the legal question of standing."  *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1351 (11th Cir. 2005).

## DISCUSSION

We first address Henry's appeal that the district court erred in concluding that section 12-16-216 didn't violate his First Amendment free speech rights to disclose information he learned only by virtue of being made a grand jury witness.  Then we consider the Attorney General's cross appeal that the district court erred in concluding that section 12-16-216 violated Henry's free speech rights

21-11483                Opinion of the Court                13

to the extent it prohibited grand jury witnesses from disclosing information they learned on their own before they testified.[2]

## HENRY'S APPEAL

### *The* Butterworth *Balancing Test*

Our analysis of Henry's appeal begins with the Supreme Court's decision in *Butterworth*. There, a reporter in Florida uncovered "information relevant to alleged improprieties committed by" the local prosecutor and sheriff's office. 494 U.S. at 626. The reporter testified before a grand jury investigating the misconduct and was warned not to reveal his grand jury testimony. *Id.* Florida's grand jury secrecy law prohibited the disclosure of a witness's grand jury testimony "or the content, gist, or import thereof." *Id.* at 627. The reporter sought a declaratory judgment in federal court that the state's secrecy law violated his First Amendment free speech rights. *Id.* at 628.

---

[2] The parties don't appeal the district court's conclusion that section 12-16-215 only prohibits the disclosure of the grand jurors' actions (like their votes, deliberations, debates, and discussions), and, therefore, section 12-16-215 didn't prohibit Henry from disclosing the content of his grand jury testimony. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining that "an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"). Thus, our focus is on section 12-16-216 as it applies to information a witness learned inside the grand jury room (Henry's appeal) and outside the grand jury room (the Attorney General's cross appeal).

The Supreme Court held that the Florida grand jury secrecy law violated the First Amendment to the extent it prohibited the reporter from making "a truthful statement of information he acquired on his own" before becoming a grand jury witness. *Id.* at 636. The "effect" of Florida's grand jury secrecy law on the reporter's ability to discuss his prior knowledge was "dramatic," the Supreme Court wrote:

> [B]efore he is called to testify in front of the grand jury, respondent is possessed of information on matters of admitted public concern about which he was free to speak at will. After giving his testimony, respondent believes he is no longer free to communicate this information . . . .

*Id.* at 635.

The *Butterworth* Court explained that the grand jury has historically "served an important role in the administration of criminal justice," with grand jury secrecy protecting a number of key government interests, including: (1) encouraging prospective witnesses to voluntarily come forward; (2) encouraging full and frank testimony by protecting witnesses from retribution and inducement; (3) preventing the target of the grand jury investigation from fleeing or trying to influence grand jurors; and (4) protecting the reputation of those exonerated by the grand jury. *Id.* at 629–30 (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218-19 (1979)). The Supreme Court cautioned, however, that "the invocation of grand jury interests is not 'some talisman that dissolves

all constitutional protections.'" *Id.* at 630 (quoting *United States v. Dionisio*, 410 U.S. 1, 11 (1973)). Rather, "grand juries are expected to 'operate within the limits of the First Amendment.'" *Id.* (quoting *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972)). Thus, the Court balanced the reporter's "asserted First Amendment rights against Florida's interests in preserving the confidentiality of its grand jury proceedings." *Id.*

The application of the balancing test in *Butterworth* tipped in favor of the reporter's First Amendment free speech rights. On the reporter's side of the scale, the Supreme Court explained that his desire to publish information about "alleged governmental misconduct" was speech "lying at the core of the First Amendment." *Id.* at 632.

On Florida's side, the Court said that "[s]ome of [the state's] interests [were] not served at all by the [state's] ban on disclosure" of a witness's knowledge of information obtained outside the grand jury, "and those that [were] served [were] not sufficient to sustain the statute." *Id.* at 632. As to the "need to keep information from the targeted individual in order to prevent his escape," the Court determined that this interest goes away when "an investigation ends" because the target will have either been exonerated or indicted. *Id.* As to the state's concern that "some witnesses will be deterred from presenting testimony due to fears of retribution," the Court explained that this interest wasn't served by the prohibition for two reasons: (1) "any witness is free *not* to divulge his own testimony"; and (2) the part of Florida's grand jury secrecy law

"which prohibits the witness from disclosing the testimony of *an-other* witness remains enforceable." *Id.* at 633.

As to the state's "interest in preventing the subornation of grand jury witnesses who will later testify at trial," the Court wrote that this interest was "marginal" because Florida's discovery rules required pretrial disclosure of the names of witnesses to the accused, because Florida had criminal sanctions for tampering with witnesses, and because trial courts can use their subpoena and contempt powers to make hesitant witnesses testify. *Id.* at 633–34. And, as to the state's interest in preserving reputational interests, the *Butterworth* Court reasoned that this interest was served by the prohibition, but "reputational interests alone cannot justify the proscription of truthful speech." *Id.* at 634. Weighing the reporter's First Amendment free speech rights against the state's interests in confidentiality, the Supreme Court concluded that the state's interests were "not sufficient to overcome" the reporter's "First Amendment right to make a truthful statement of information he acquired on his own." *Id.* at 636.

*Butterworth* provides the balancing test we must apply to Henry's claim that the Alabama grand jury secrecy law violates his First Amendment free speech rights. We balance Henry's "asserted First Amendment rights against [the state's] interests in preserving the confidentiality of its grand jury proceedings." *See id.* at 630. The "burden of demonstrating this balance rests upon" Henry, because he is "the private party seeking disclosure." *See Douglas Oil*, 441 U.S. at 223.

Henry contends that strict scrutiny applies to his First Amendment challenge because the Alabama grand jury secrecy law is a content-based regulation of speech. *See Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th Cir. 2020) (noting that "[s]trict scrutiny ordinarily applies to content-based restrictions of speech"). To survive strict scrutiny, a law must be "narrowly tailored to serve compelling state interests." *Id.* at 861–62 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

But *Butterworth* tells us that we apply a balancing test—and not strict scrutiny—to a grand jury witness's claim that the state's grand jury secrecy law violates his First Amendment free speech rights. We apply the balancing test—and not strict scrutiny—because *Butterworth* didn't require that the state's grand jury secrecy law had to be narrowly tailored to serve a compelling state interest, which is inconsistent with applying strict scrutiny. *See Doe v. Bell*, 969 F.3d 883, 888 n.6 (8th Cir. 2020) (noting that *Butterworth* "did not apply strict scrutiny when evaluating a state secrecy requirement concerning the testimony of grand jury witnesses"). And we apply the balancing test—and not strict scrutiny—because *Butterworth* put the burden on the witness to show that his First Amendment free speech rights outweighed the state's interests, which is also inconsistent with applying strict scrutiny. *Compare Douglas Oil*, 441 U.S. at 223 ("It is clear . . . that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure."), *with Otto*, 981

F.3d at 868 (explaining that "[t]he government carries the burden of proof" under strict scrutiny).

Where the Supreme Court has a "general" legal standard but applies a more "specific" test to a specific type of claim, we use the more specific test where it applies. *See Powell v. Barrett*, 541 F.3d 1298, 1302 (11th Cir. 2008) (en banc). That is the case here. In general, strict scrutiny applies to content-based regulations of speech, *Otto*, 981 F.3d at 861, but the more specific *Butterworth* balancing test applies to a grand jury witness's First Amendment challenge to a state's grand jury secrecy law, 494 U.S. at 630. We therefore apply the *Butterworth* balancing test, weighing Henry's "asserted First Amendment rights against [Alabama's] interests in preserving the confidentiality of its grand jury proceedings." *Id.*

### Henry's Asserted First Amendment Rights

As to Henry's asserted First Amendment rights, he argues that he has a strong interest in publicly disclosing his allegations of prosecutorial misconduct. We agree. The "publication of information relating to alleged governmental misconduct" is speech "lying at the core of the First Amendment." *Butterworth*, 494 U.S. at 632. Here, Henry alleges that: (1) there were leaks about the grand jury coming from Deputy Attorney General Hart; (2) some of these leaks were to Coleman, a lobbyist, who used the sensitive information to his benefit in political campaigns; and (3) Henry believed that Deputy Attorney General Hart engaged in prosecutorial misconduct during his grand jury testimony. Because these

21-11483            Opinion of the Court            19

accusations, if true, raise a claim of "governmental misconduct," they go to the core of the First Amendment.  *See id.*

*Alabama's Interests in Preserving Confidentiality*

As to Alabama's interests in confidentiality, the grand jury has been an important check on government power since even before the Founding.  As early as the fourteenth century, the grand jury "was '[n]o longer required to make known to the court the evidence upon which they acted' but instead was 'sworn to keep their proceedings secret by an oath which contained no reservation in favor of the government.'"  *Doe*, 969 F.3d at 889–90 (quoting George J. Edwards, Jr., *The Grand Jury: Considered from an Historical, Political and Legal Standpoint, and the Law and Practice Relating Thereto* 26–28 (Cosimo 2009) (1906)).  By the seventeenth century, the grand jury served "to safeguard citizens against an overreaching Crown and unfounded accusations."  *Butterworth*, 494 U.S. at 629.  Secrecy was essential to the grand jury's ability to check prosecutorial overreach; the "tradition of secrecy surrounding grand jury proceedings evolved" in part to ensure the grand jury's "impartiality."  *Id.*

"When the institution of the grand jury crossed from England to the American colonies, the rule of grand jury secrecy came with it."  *Doe*, 969 F.3d at 890.  "The Framers later included the Grand Jury Clause in the Fifth Amendment, making grand jury secrecy an implicit part of American criminal procedure."  *Id.* (cleaned up).  Today, grand jury secrecy "remains important to safeguard a number of" government interests.  *Butterworth*, 494

U.S. at 630; *Douglas Oil*, 441 U.S. at 218 ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").

The Supreme Court has identified four interests served by grand jury secrecy laws: (1) "many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony"; (2) "witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements"; (3) "those about to be indicted [might] flee, or [might] try to influence individual grand jurors to vote against indictment"; and (4) people "accused but exonerated by the grand jury" would be "held up to public ridicule." *Douglas Oil*, 441 U.S. at 219.

We too have recognized the importance of grand jury secrecy, even after an investigation has concluded. "The grand jury, as an institution, has long been understood as a 'constitutional fixture in its own right,' operating independently of any branch of the federal government." *Pitch v. United States*, 953 F.3d 1226, 1228–29 (11th Cir. 2020) (en banc) (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992)). The grand jury's independence allows it "to serve as a buffer between the government and the people with respect to the enforcement of the criminal law." *Id.* at 1229. "But the ability of the grand jury to serve this purpose," we have said, "depends upon maintaining the secrecy of its proceedings." *Id.* "The long-established policy of upholding the secrecy of the grand

jury helps to protect the innocent accused from facing unfounded charges, encourages full and frank testimony on the part of witnesses, and prevents interference with the grand jury's deliberations." *Id.* The state's interests in the confidentiality of the grand jury proceeding are interests "of the highest order." *See Doe*, 969 F.3d at 889–92 (citation omitted).

Finally, the state has an interest in the confidentiality of "information," including grand jury information, that is "the [s]tate's own creation." *See Butterworth*, 494 U.S. at 636 (Scalia, J., concurring). The Supreme Court has long recognized the state's interest in the confidentiality of records the state creates as a critical and necessary result of enforcing the law and running the people's government. *See, e.g.*, *Pennsylvania v. Ritchie*, 480 U.S. 39, 49 (1987) (recognizing a state's "acknowledged public interest" in the confidentiality of child services records). And so have we. *See, e.g.*, *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1338 (11th Cir. 2020) (examining Georgia's Lethal Injection Secrecy Act and recognizing "that the confidentiality provided by the Act is necessary to protect Georgia's source of pentobarbital for use in executions"); *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (recognizing that "parole files are 'confidential state secrets' under Georgia law" (citation omitted)).

### *Balancing Henry's Asserted First Amendment Rights Against the State's Interests in Preserving Confidentiality*

Having identified both sides of the balancing test, we must weigh Henry's "asserted First Amendment rights against [the

state's] interests in preserving the confidentiality of its grand jury proceedings." *See Butterworth*, 494 U.S. at 630. We conclude that the balance weighs in favor of continued confidentiality in grand jury information a witness learned by virtue of being made a witness. Here's why.

We begin with Henry's asserted First Amendment rights. Henry seeks to disclose information about alleged government misconduct inside the grand jury room. Henry's asserted First Amendment rights are the same as the First Amendment rights the reporter asserted in *Butterworth*. *See id.* at 632 ("Florida seeks to punish the publication of information relating to alleged governmental misconduct . . . ."). So, that side of the scale in *Butterworth* and in Henry's case have the same weight.

But, on the other side of the scale, there are three critical differences between this case and *Butterworth* that tip the balance in favor of Alabama. First, in *Butterworth*, the Supreme Court explained that "[s]ome of" the state's interests were "not served at all by the Florida ban on disclosure" of information the witness learned before he testified. *See id.* This was so because there was no connection between Florida's interests in encouraging witness cooperation and frank and full testimony and a witness disclosing information that he learned before he entered the grand jury room. "[T]he concern that some witnesses will be deterred from presenting testimony due to fears of retribution" was, the Supreme Court reasoned, "not advanced by" Florida's prohibition on disclosing information the witness knew before he testified. *See id.* at 633.

Here, unlike in *Butterworth*, Alabama's interests are *all* served by the state's ban on witnesses disclosing what they learned inside the grand jury room.  As to the state's interest in witness cooperation, a witness will be less likely to cooperate in a grand jury investigation if he knows that his testimony will be disclosed after the investigation has ended.  The knowledge that his testimony may be disclosed in the future will chill cooperation out of fear of unwanted scrutiny or retaliation.

The same applies to the state's interest in encouraging truthful testimony.  If the grand jury proceedings were made public, "witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements." *Id.* at 630 (quoting *Douglas Oil*, 441 U.S. at 219).  A witness is going to be more candid if he knows that his testimony will not be exposed down the line.

As to the state's interest in making sure that the target of a grand jury investigation doesn't escape, that's obviously less of a concern once the target has been charged. *See id.* at 632.  Speaker Hubbard, after all, has already been indicted and imprisoned.  But even though the grand jury investigation here is over, there may be accomplices and coconspirators that a future grand jury could indict.  Keeping the grand jury proceedings secret ensures that not-yet-indicted accomplices and coconspirators do not destroy evidence and do not flee.  Grand jury secrecy safeguards the state's ability to bring future charges—either against Speaker Hubbard or

outstanding accomplices and coconspirators—if new evidence comes to light.

The state also has "a substantial interest in seeing that 'persons who are accused but exonerated by the grand jury will not be held up to public ridicule.'" *See id.* at 634 (citation omitted). The grand jury may have considered evidence of other crimes Speaker Hubbard committed that didn't result in his indictment. *See Doe*, 969 F.3d at 893 (explaining that the state has a "compelling interest in ensuring individual members of the grand jury do not use the information they gathered as part of the grand jury process to impugn the innocence of the accused with charges they could not agree to collectively"). And other people besides Speaker Hubbard—like grand jury witnesses or people mentioned by witnesses—could by harmed by the disclosure of grand jury information. Grand jurors hear evidence about people who aren't targets of the investigation and who aren't indicted. They also hear evidence that isn't subject to adversarial testing and may be hearsay or otherwise inadmissible and thus less trustworthy. Preventing the disclosure of grand jury testimony that could damage a third party's reputation is an important state interest that survives the grand jury's discharge.

Second, in *Butterworth*, the state had no confidentiality interest in the reporter's information because he acquired the information on his own. *See* 494 U.S. at 635. But here, Henry wants to disclose grand jury information he acquired "only by virtue of being made a witness." *See id.* at 636 (Scalia, J., concurring). The

state has an interest in ensuring that "information of [its] own creation"—including grand jury proceedings—remains confidential. *See id.*; *cf. Ritchie*, 480 U.S. at 49 (recognizing a state's "acknowledged public interest" in the confidentiality of child services records). While the state's confidentiality interest in information of its own creation wasn't served in *Butterworth* by barring the reporter from disclosing information he acquired on his own, it's served here by barring Henry from disclosing information he learned inside the grand jury room.

Third, the *Butterworth* Court recognized the distinction, for First Amendment purposes, between information that a witness had before he testified (like the reporter in *Butterworth*) and information that the witness learned in a judicial proceeding (like what Henry wants to disclose). The *Butterworth* reporter had a "right to divulge information of which he was in possession before he testified before the grand jury." 494 U.S. at 632. But that right did not necessarily extend to "information which [the reporter] may have obtained as a result of his participation in the proceedings of the grand jury." *Id.* As to information obtained from grand jury proceedings, the Court analogized it to information "obtained through [civil] discovery." *Id.* at 631. It "did not offend the First Amendment," the Court explained, to "prohibit[] a newspaper from publishing information which it had obtained through discovery procedures." *Id.* at 631–32.

Justice Scalia, in his *Butterworth* concurring opinion, also drew a sharp line between information that a witness knew before

he testified and information he learned in the grand jury room. "[T]here is considerable doubt whether a witness can be prohibited, even while the grand jury is sitting, from making public what he knew before he entered the grand jury room." *Id.* at 636 (Scalia, J., concurring). But for information that a witness learned "only by virtue of being made a witness," "[t]here may be quite good reasons why the [s]tate would want the . . . information . . . to remain confidential even after the term of the grand jury has expired." *Id.* Because Henry, unlike the reporter in *Butterworth*, wants to disclose information he learned only by virtue of being made a grand jury witness, Alabama, unlike Florida, had "quite good reasons" for wanting information about the grand jury proceedings to remain confidential.

To be sure, some of the state's interests in grand jury secrecy diminish "once a grand jury has been discharged." *See id.* at 632 (majority opinion). "When an investigation ends," the Supreme Court has explained, "there is no longer a need to keep information from the targeted individual in order to prevent his escape." *Id.* "There is also no longer a need to prevent the importuning of grand jurors" once their deliberations have ended. *Id.* at 633–32.

But the other important state interests remain "even after the term of the grand jury has expired." *See id.* at 636 (Scalia, J., concurring). In *Pitch*, for example, a historian petitioned the district court "for the grand jury transcripts related to the Moore's Ford Lynching—a horrific event involving the murders of two African American couples for which no one has ever been charged—

to be used in his book about the lynching." 953 F.3d at 1229. The grand jury records in the case were decades old because the lynching happened in 1946. *Id.* at 1230. Although the grand jury investigating the crime "heard sixteen days of testimony from countless witnesses," it "failed to charge anyone with the murders" and the "case remains unsolved." *Id.* Even though the crime happened over seventy years ago and most witnesses to the crime were probably deceased, we explained that the request for the grand jury transcripts "implicate[d] the long-established policy that grand jury proceedings in federal courts should be kept secret." *Id.* at 1232.

To sum up, Alabama's interests in prohibiting Henry from disclosing grand jury information he learned only by virtue of being made a witness are weightier than Florida's interests were in prohibiting the *Butterworth* reporter from disclosing information he learned on his own outside the grand jury. And the weightier interests tip the balancing test in favor of the Attorney General.

## THE ATTORNEY GENERAL'S CROSS APPEAL

We now turn to the Attorney General's cross appeal of the district court's declaration for Henry that section 12-16-216 violated his First Amendment free speech rights to the extent it prohibited him from disclosing information he learned before his grand jury testimony. We first address the Attorney General's argument that Henry lacks standing. We then consider whether the district court erred in concluding that section 12-16-216 prohibited Henry from disclosing information he learned outside the grand jury room.

*Standing*

The Attorney General argues that Henry lacks standing to challenge section 12-16-216 because he has no "inclination to enforce the" state's grand jury secrecy law "against *anyone* in the manner Henry fears."

Article III limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "The tripartite test for Article III standing" is "well known":

> *First*, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Second*, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Third*, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" *Jacobson*

v. *Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citation omitted).

We begin with injury in fact. The Attorney General doesn't argue that Henry failed to establish a concrete and particularized injury. Wisely so; alleged First Amendment free speech violations are concrete and particular injuries for purposes of Article III standing. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc) (explaining that "[v]iolations of the rights to free speech" are "intangible harms that are also both direct and concrete"); *Speech First*, 32 F.4th at 1119 ("There is no doubt—or dispute—that the [plaintiffs'] claimed injury is 'concrete and particularized' . . . because they have alleged a deprivation of their First Amendment right to free speech."). "The standing question here thus turns on whether" Henry's injury is "imminent, not conjectural or hypothetical." *See Speech First*, 32 F.4th at 1119.

To determine whether a plaintiff bringing a First Amendment free speech claim established an imminent injury, "we simply ask whether the operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor—even where the policy falls short of a direct prohibition against the exercise of First Amendment rights." *Id.* at 1120 (cleaned up). "In making that assessment, the threat of formal discipline or punishment is relevant to the inquiry, but it is not decisive." *Id.* "The fundamental question under our precedent," the *Speech First* Court explained, is "whether the challenged policy 'objectively chills' protected expression." *Id.*

Applying *Speech First* to Henry's free speech claims, the question is whether the Alabama grand jury secrecy law objectively chills Henry's free speech rights. *Id.* We conclude that it does. Henry challenged section 12-16-216, facially and as applied, as an unconstitutional restriction on his ability to disclose what he knew about the investigation into Speaker Hubbard, his grand jury testimony, and the grand jurors' questions. The Attorney General's position in the district court and here is that section 12-16-216 prohibits Henry from disclosing his grand jury testimony and what he learned inside the grand jury room. That position would objectively chill Henry's right to speak about his grand jury testimony and make a reasonable person self-censor. Section 12-16-216 doesn't "fall[] short of a direct prohibition against the exercise of [his] First Amendment rights"—it *is* a direct prohibition against the exercise of his First Amendment rights. *See id.* (cleaned up). Like *Speech First*, that is an imminent injury. *See id.*

That part of Henry's claim also includes speech—information he learned outside the grand jury room—that the Attorney General will not prosecute under section 12-16-216 doesn't change our conclusion. Once Henry has established at least some imminent injury to his free speech rights, he has established Article III injury in fact. *See Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019) ("Article III standing is not a 'You must be this tall to ride' measuring stick. 'There is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the

injury, regardless of how small the injury may be.'" (citation omitted)).

For this reason, our decision in *Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003) is distinguishable. We concluded in *Doe* that the plaintiffs lacked standing to challenge an Alabama statute criminalizing "deviate sexual intercourse" partly because the Attorney General had no intention of enforcing the law following *Lawrence v. Texas*, 539 U.S. 558 (2003). The *Doe* plaintiffs did not establish an injury in fact because their "complaint contain[ed] no allegations" supporting "a conclusion that their fear" that their First Amendment rights would be restrained was "objectively reasonable." 344 F.3d at 1287. But here, Henry's fear that his First Amendment rights will be restrained is objectively reasonable—the Attorney General has told Henry that he would enforce section 12-16-216 against Henry for disclosing information he learned inside the grand jury room. That's enough for injury in fact.

We also conclude that Henry established that his injury was fairly traceable to the Attorney General and redressable by a favorable decision. His injury was fairly traceable to the Attorney General because the grand jury investigation into Speaker Hubbard was spearheaded by the Attorney General's office and Deputy Attorney General Hart. Deputy Attorney General Hart led the investigation, subpoenaed Henry as a witness, and warned Henry about disclosing his grand jury testimony. *See* Ala. Code 36-15-13 (granting the Attorney General and his assistants the power to seek indictments before the grand jury). As Deputy Attorney General

Hart told Baron Coleman, "the [g]rand [j]ury [s]ecrecy thing . . . shut[s] you down because you go in there and *we* say 'Don't you speak about this.'" Deputy Attorney General Hart believed that "*we* are [on] utterly solid ground shutting people up." Any enforcement of the Alabama grand jury secrecy law against Henry for disclosing grand jury information would be "fairly traceable" to the Attorney General.

As to redressability, an injunction against the Attorney General prohibiting him from enforcing section 12-16-216 against Henry so Henry could disclose the content of his grand jury testimony would redress his alleged First Amendment violation. Deputy Attorney General Hart, if enjoined from enforcing section 12-16-216 against Henry, could no longer "shut [Henry] down" from speaking about the grand jury proceedings. Thus, Henry has standing to bring his First Amendment challenge to section 12-16-216.

### *Does Section 12-16-216 Prohibit Henry from Disclosing Information He Learned Before He Testified as a Witness?*

The district court's declaration that section 12-16-216 violated Henry's First Amendment free speech rights because it prohibited him from disclosing information he knew before his grand jury testimony relied on two premises. The first premise was that section 12-16-216 could arguably be read to prohibit a grand jury witness from disclosing information he learned before he testified. The second premise was that, because the statute arguably prohibited a grand jury witness from disclosing information he learned outside the grand jury room, section 12-16-216, like the Florida

statute in *Butterworth*, violated the witness's First Amendment free speech rights.  But the first premise is wrong; section 12-16-216 can't reasonably be read to prohibit the disclosure of information learned outside the grand jury room like the statute in *Butterworth*.  We agree with the Attorney General that the "clear focus" of the statute "is on protecting the secrecy of the grand jury proceedings" and "not on prohibiting witnesses from discussing information they knew prior to testifying."

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'"  *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).  This analysis has two steps.  First, we "construe the challenged statute."  *United States v. Williams*, 553 U.S. 285, 293 (2008).  Second, we ask "whether the statute, as we have construed it, criminalizes a substantial amount of protected expressive activity."  *Id.* at 297.  Satisfying the second step of the overbreadth doctrine "is not easy to do."  *Doe v. Valencia Coll.*, 903 F.3d 1220, 1232 (11th Cir. 2018).  And Henry, as the plaintiff alleging overbreadth, has "the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists."  *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (cleaned up).

We first construe section 12-16-216.  The district court determined that section 12-16-216 was overbroad and prohibited the

disclosure of information a witness knew before testifying because: (1) the law doesn't define its terms, leaving the public to "guess" what speech it captures; (2) the law is "not too different" from the Florida grand jury secrecy law struck down by *Butterworth*; and (3) the law's plain text would "arguably" sanction Henry for disclosing knowledge he obtained before he testified. Thus, the district court concluded that the law "captures a witness's prior knowledge," just like the Florida grand jury secrecy law in *Butterworth*. But section 12-16-216 doesn't prohibit the disclosure of information a witness learned outside the grand jury room.

Our starting point is the text. *See United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("The starting point for all statutory interpretation is the language of the statute itself."). Section 12-16-216 prohibits the disclosure of four things. First, it prohibits a grand jury witness from disclosing "any knowledge of the form, nature or content of any physical evidence presented to" the grand jury. Ala. Code § 12-16-216. Because the first prohibition expressly applies to physical evidence "presented to" the grand jury, it doesn't apply to the disclosure of information the witness knew before he testified.

The second and third prohibitions in the Alabama grand jury secrecy law are related. The law prohibits a grand jury witness from disclosing "any knowledge of the form, nature or content of any question propounded to any person within or before any grand jury." *Id.* And the law prohibits the disclosure of "any comment made by any person in response thereto"—any answer given by a

grand jury witness to a question. *Id.* Because the second and third prohibitions apply to questions asked to a grand jury witness and the answers given to those questions, they too don't apply to the disclosure of information learned outside the grand jury room.

That leaves the law's fourth prohibition. The grand jury secrecy law prohibits the disclosure of "any other evidence, testimony or conversation *occurring or taken therein.*" *Id.* (emphasis added). The limiting language at the end of the fourth prohibition is key. It limits the statute's reach to evidence, testimony, or conversation that occurred or was taken inside the grand jury room—matters that occurred or were taken "therein." Because of this limiting language, the fourth prohibition doesn't reach the disclosure of information a witness knew before testifying.

Henry argues that section 12-16-216 prohibits the disclosure of information a witness "knew prior to entering the grand jury room" because it prohibits the witness from disclosing "at any time, directly or indirectly, conditionally or unconditionally, by any means whatever," the four topics covered by the grand jury secrecy law. But this language doesn't extend the statute to a witness's prior knowledge. It regulates the duration of the prohibition against disclosing information learned within the grand jury room and provides that any type of disclosure violates the law. This language can't be read to prohibit the disclosure of information a grand jury witness learned outside the grand jury room. As the Attorney General correctly argues, this language explains the

"litany of ways" information can be disclosed but is silent as to "*what*" can't be disclosed.

Reading section 12-16-216 to cover only evidence and testimony "occurring or taken" in the grand jury room is consistent with the other parts of Alabama's grand jury secrecy law. *See United States v. Velez*, 586 F.3d 875, 877 (11th Cir. 2009) ("In interpreting a statutory provision, we look to the language of the provision itself, the specific context in which that language is used, and the broader context of the statute as a whole." (cleaned up)). First, the Alabama Legislature's findings stress that "it is essential to the fair and impartial administration of justice that all grand jury *proceedings* be secret." Ala. Code § 12-16-214 (emphasis added). The Legislature's findings focus on the secrecy of the "proceedings," not on events occurring outside of those proceedings.

Second, the Alabama grand jury secrecy law prohibits the disclosure by a witness of "any knowledge or information pertaining to any grand juror's questions, considerations, debates, deliberations, opinions or votes on any case, evidence, or other matter *taken within or occurring before* any grand jury." *Id.* § 12-16-215 (emphasis added). Like section 12-16-216, this companion section contains limiting language showing that its secrecy requirements reach only information "taken within or occurring before" a grand jury proceeding. The focus of both sections is on the information disclosed within the grand jury room.

It doesn't matter that the terms of section 12-16-216 are undefined. Where a statutory term is undefined, "we look to the plain

and ordinary meaning of the statutory language as it was understood at the time the law was enacted." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021); *see also CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning." (citation omitted)).  The ordinary meaning of the key language in section 12-16-216 ("occurring or taken therein"), coupled with the Legislature's findings and the other sections of the Alabama grand jury secrecy law, shows that section 12-16-216 applies only to evidence, questions, testimony, and conversations occurring or taken within the grand jury proceeding.  The failure to define terms with a readily discernable ordinary meaning doesn't leave the public guessing about the scope of section 12-16-216.

There are two important differences between the Alabama grand jury secrecy law and the Florida grand jury secrecy law in *Butterworth*.  First, section 12-16-216 contains language limiting its scope to evidence, testimony, and conversations that took place inside the grand jury room.  *See* Ala. Code § 12-16-216 (restricting the law to the disclosure of matters "occurring or taken therein").  The Florida grand jury secrecy law in *Butterworth* didn't have the same limiting language.  *See* 494 U.S. at 627.  Here, because the text of section 12-16-216 is limited to information "occurring or taken" before the grand jury, it cannot be read to prohibit the disclosure of information learned outside the grand jury room.

Second, the Alabama grand jury secrecy law prohibits the disclosure of the "form, nature or content" of physical evidence, of the questions asked to witnesses, as well as the disclosure of "any comment made . . . in response thereto," Ala. Code § 12-16-216, while the Florida law more broadly prohibited disclosure of the "gist" or "import" of testimony, *Butterworth*, 494 U.S. at 627. This distinction matters: "The Florida statute specifically precluded disclosing the 'gist or import' of the testimony, which clearly encompassed the substance of the knowledge the grand jury witness had before entering the grand jury process." *Hoffman-Pugh v. Keenan*, 338 F.3d 1136, 1139 (10th Cir. 2003). Because this critical language is missing from the Alabama statute, it's wrong to say, as the district court did, that the Alabama grand jury secrecy law is "not too different" from the Florida law condemned by *Butterworth*. It's different enough to make a difference.

In sum, considering the text and structure of section 12-16-216, the statutory scheme as a whole, and the differences between the Alabama and the Florida grand jury secrecy laws, the district court erred in concluding that section 12-16-216 could "arguably" sanction Henry for disclosing his prior knowledge. It couldn't.

But, to the extent there is any doubt, we will "uphold a state statute against a facial challenge if the statute is readily susceptible to a narrowing construction that avoids constitutional infirmities." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1256 n.6 (11th Cir. 2005) (citation omitted). Although we will not "rewrite the clear terms of a statute in order to reject a facial challenge," *id.*

(citation omitted), our occasional "reluctance" to apply a limiting construction "is not an iron-clad rule," *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1367 (11th Cir. 2021). Rather, we will not invoke facial overbreadth "when a limiting construction has been or could be placed on the challenged statute." *Id.* (quoting *Broadrick*, 413 U.S. at 613).

Here, a limiting construction has and can be placed on section 12-16-216. The Attorney General has read the Alabama grand jury secrecy law not to prohibit the disclosure of information a witness learned outside the grand jury room; as we have explained, the plain language of the statute supports this reading of the statute. Because the statute can be read not to prohibit disclosure of information a witness learned outside the grand jury room without rewriting its plain terms, we should read it that way if there's any lingering doubt about its scope. *See id.*; *see also United States v. Waymer*, 55 F.3d 564, 569 (11th Cir. 1995) (explaining that the "[a]pplication of the overbreadth doctrine is employed as a last resort and is not to be invoked when a limiting construction has been or could be placed on the challenged statute").

## CONCLUSION

As to Henry's appeal of what he learned only by virtue of being made a grand jury witness, the district court did not err in concluding that the state's interests in continued grand jury confidentiality outweighed Henry's First Amendment free speech rights. We therefore affirm the district court's partial summary judgment for the Attorney General.

But as to the Attorney General's cross appeal of what Henry learned on his own outside the grand jury room, the district court erred in concluding that section 12-16-216 arguably prohibited the disclosure of a witness's prior knowledge.  We therefore reverse the district court's partial summary judgment for Henry, and remand with instructions for the district court to enter judgment for the Attorney General.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**